UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE | : | BANKRUPTCY NO. 91-468 (PGH) |
| | : | CHAPTER 11 |
| H. K. PORTER COMPANY, INC., DEBTOR: | | |
| | : | |
| CONTINENTAL CASUALTY CO., | : | ADVERSARY NO. 05-3145 |
| CONTINENTAL INSURANCE CO., | : | |
| TRANSPORTATION INSURANCE CO. | : | |
| AND COLUMBIA CASUALTY CO., | : | |
| Plaintiffs | : | |
| vs. | : | |
| H. K. PORTER COMPANY, INC., | : | |
| H. K. PORTER COMPANY, INC. | : | |
| ASBESTOS TRUST, Defendants | : | |

APPEARANCES:

DAVID K. RUDOV, ESQ., PITTSBURGH, PA, ATTORNEY FOR PLAINTIFFS
BETH A. SLAGLE, ESQ. AND RICHARD T. VICTORIA, ESQ., PITTSBURGH, PA,
ATTORNEY FOR DEFENDANTS
UNITED STATES TRUSTEE, PITTSBURGH, PA

WARREN W. BENTZ
U.S. BANKRUPTCY JUDGE

DECEMBER      26     , 2006

OPINION

I.  Introduction

H. K. Porter Company, Inc. ("Porter" or "Debtor") filed a voluntary Petition under Chapter 11 of the Bankruptcy Code on February 15, 1991 (the "Filing Date").  The filing was necessary because Porter had been involved in the manufacture, distribution and sale of products containing asbestos and had been named as a defendant in many lawsuits for wrongful death, personal injury and property damage.

Both before and after the Filing Date, Porter sought coverage for such claims under

1

various insurance policies. Such coverage was, in many instances, vigorously disputed and resulted in litigation and extensive negotiations between Porter and its insurance carriers.

A controversy existed between Porter and Continental Casualty Co., Continental Insurance Co., Transportation Insurance Co., and Columbia Casualty Co. (the "Carriers") concerning their respective rights and obligations in connection with a number of general liability and excess insurance policies (the "Policies") issued by the Carriers.

During the pendency of the Bankruptcy Case, an agreement entitled FINAL SETTLEMENT AGREEMENT BETWEEN H. K. PORTER COMPANY, INC., H. K. PORTER COMPANY, INC. ASBESTOS TRUST, CONTINENTAL CASUALTY COMPANY, CONTINENTAL INSURANCE COMPANY, TRANSPORTATION INSURANCE COMPANY AND COLUMBIA CASUALTY COMPANY ("Settlement Agreement") was executed and presented to this Court for approval. After notice and hearing, the Settlement Agreement was approved by Order dated June 20, 2000.

After approval of the Settlement Agreement, Porter continued to pursue insurance coverage from insurance companies, including Harbor Insurance Company ("Harbor") which had issued at least two policies, Policy Nos. 11676 and HI 179576 (the "Harbor Policies") to Porter. Coverage was refused by the carrier under the Harbor Policies for the reason that Continental Insurance Company ("Continental") had assumed Harbor's liabilities, and as a result of its relationship with Continental, Harbor was released by the terms of the Settlement Agreement. Porter asserts that Harbor was not released under the terms of the Settlement Agreement.

Presently before the Court are cross-motions for Summary Judgment on the Complaint

for Declaratory Relief filed by the Carriers.[1] The Carriers seek a declaration that "(a) the Settlement Agreement unambiguously releases all claims by the Debtor against the Carriers for insurance coverage under any insurance policy of the Carriers and all related entities, including the Harbor Policies, and (b) the Settlement Agreement prevents the Debtor from taking any further actions to seek insurance coverage under the Harbor Policies. . . ."

Porter seeks an Order "specifically declaring that neither Harbor Insurance Company nor the policies issued to H. K. Porter Company, Inc. by Harbor Insurance Company were or are released under the terms of the Settlement Agreement."

## II. Jurisdiction and Venue

This Court has jurisdiction over this action pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding under 28 U.S.C. §157(b)(2)(A) and (O). In the Order approving the Settlement Agreement, it was provided "that the Final Settlement Agreement is subject to the jurisdiction and further order of the Bankruptcy Court."

Venue of this action is proper in this judicial district pursuant to 28 U.S.C. §§1408 and 1409.

## III. Issue

---

[1] All parties agreed at the outset of this Adversary Case to file Motions for Summary Judgment. Following that agreement, the Carriers, rather than filing a document entitled Motion for Summary Judgment, filed a Memorandum of Law in Support of a Motion for Summary Judgment. We find that the oral agreement to have the matter decided on Motions for Summary Judgment was a sufficient Motion and that Porter did not suffer any surprise or prejudice by the lack of the Carriers filing a formal document entitled Motion for Summary Judgment. The issues have been fully addressed by all parties.

3

While both Porter and the Carriers assert that the Settlement Agreement is clear and unambiguous, there is disagreement about the meaning of the language. Specifically, the issue is the scope of the release provided by the Settlement Agreement.

The Carriers posit that the Settlement Agreement contains broad, full, general releases that bar all claims by Porter against the Carriers and their "predecessors" and "assignors" and that Harbor, as a "predecessor" and "assignor" is included as a released party within the general releases.

Porter posits that the language of the Settlement Agreement applies only to policies issued by the Carriers and does not release Harbor from its obligations under the Harbor Policies.

## Discussion

The primary objective in interpreting a contract is to derive the objective intent of the parties at the time of the making of the contract. In re Combustion Engineering, Inc., 366 F.Supp. 2d 224, 229-30 (D.NJ. 2005); Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1009 (3d Cir. 1980) citing O'Farrell v. Steel City Piping Co., 266 Pa. Super. 219, 403 A.2d 1319, 1324 (1978).

"In resolving a contract dispute, 'the initial determination is whether the contract is ambiguous concerning the dispute between the parties.'" United States v. Pantelidis, 335 F.3d 226, 235 (3d Cir. 2003) quoting Sumitomo Machinery Corp. of America, Inc. v. Allied Signal, Inc., 81 F.3d 328, 332 (3d Cir. 1996). "The determination of whether a contract is ambiguous is a question of law. United States v. Pantelidis, 335 F3d at 235, citing Taylor v. Continental Group Change in Control Severance Pay Plan, 933 F.2d 1227, 1232 (3d Cir. 1991). A contract is

ambiguous "where the contract is susceptible of more than one meaning," Sumitomo Machinery, 81 F.3d at 332, or "if it is subject to reasonable alternative interpretations." Taylor, 933 F.2d at 1232.

> To decide whether a contract is ambiguous, we do not simply determine whether, from our point of view, the language is clear.  Rather, we "hear the proffer of the parties and determine if there [are] objective indicia that, from the linguistic reference point of the parties, the terms of the contract are susceptible of different meanings." Sheet Metal Workers [v. 2300 Group, Inc.], 949 F.2d [1274] at 1284 [3d Cir. 1991] (brackets in original) (quoting Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1011 (3d Cir. 1980)).  Before making a finding concerning the existence or absence of ambiguity, we consider the contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation.  Id.; [International Union v.] Mack Trucks, 917 F.2d [107] at 111 [3d Cir. 1990]; see also Restatement (Second) of Contracts §223 cmt. b (1981) ("There is no requirement that an agreement be ambiguous before evidence of a course of dealing can be shown").  Extrinsic evidence may include the structure of the contract, the bargaining history, and the conduct of the parties that reflects their understanding of the contract's meaning. Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc., 989 F.2d 132, 135 (3d Cir. 1993).
>
> In re New Valley Corp., 89 F.3d 143, 150 (3d Cir. 1996).  As one of our sister courts has stated, "[i]f a contract is not open to any other reasonable interpretations, and is therefore unambiguous, then the written words of the contract must dictate the disposition of a dispute involving that contract." Funeral Fin. Sys. v. United States, 234 F.3d 1015, 1018 (7th Cir. 2000) (applying federal common law of contract).

United States v. Yusuf, No. 05-3019, 2006 WL 2578380 at 3 (3d Cir. Sept. 7, 2006).

After reading the language of the Settlement Agreement and after consideration of the oral arguments and the extensive briefs of the parties, we find no ambiguity in the language of the Settlement Agreement.

The language of the Settlement Agreement as a whole reflects the Debtor's intent to provide the Carriers and their predecessors and assignors a broad, general release in exchange for the payment of $12.4 million.

The Settlement Agreement is not drafted like a limited release or like a release drafted to settle claims on certain specific policies. The clear wording at the beginning of the release language in ¶3.3 of the Settlement Agreement is a release of all claims. It provides:

> 3.3. For its part, and in return for the Settlement Payment, Porter hereby fully, finally and forever compromises, settles, releases and discharges each of the Carriers and their predecessors, successors, assignors, assigns, divisions and merged or acquired companies or operations, employees, officials, agents, attorney, representatives, officers and directors from any and all past, present, or future actual, alleged or potential obligations, claims, actions, debts, damages, liabilities, expenses, demands and causes of action, known or unknown. . . .

This is a clear, general release, releasing known or unknown causes of action against the Carriers <u>and</u> related entities.

Paragraph 3.3 continues to identify certain claims being released, but the language is preceded by the words "including but not limited to."

Paragraph 3.3 continues:

> including but not limited to all claims, contractual or extracontractual, for costs and liabilities associated with or in any way related to any insurance policies issued or allegedly issued by the Carriers at any time. Porter intends, with respect to all such claims, to release the Carriers to the fullest extent permitted by law, and will dismiss or discontinue with prejudice any proceeding pending against any of them and will not institute any action or proceeding against them concerning any of the Policies.

In the second part of Paragraph 3.3, the draftsmen wanted to make sure that the policies in dispute were released and attention was directed to those specific policies. This occurs in many of the subsequent paragraphs. However, all those comments follow the general release language and fall into the category of "including but not limited to."

The Settlement Agreement contains numerous paragraphs which refer to "the Carriers" or refer to specific policies or to policies issued by the Carriers, but none has any language which

limits the general release granted in paragraph 3.3.  Further, it would make no sense to sign a document containing the general all-encompassing release language of paragraph 3.3 if it were intended to only release and settle specific policies.

We conclude after a thorough review of the language of the Settlement Agreement and after consideration of the positions of the parties as outlined at oral argument and in extensive briefs that there is no ambiguity in the Settlement Agreement and that the Settlement Agreement as a whole reflects the clear intent of the parties that Debtor provided a broad, general release to "the Carriers and their predecessors, successors, assignors, assigns, divisions and merged or acquired companies. . . ."

A further issue is whether Harbor fits into one of the categories of released parties.  The Plaintiffs have provided documentation to show that The Continental Corporation, the former parent company of Continental Insurance Company and Harbor sold all of Harbor's stock to NAC Reinsurance Corporation in 1990, ten years before the Settlement Agreement was executed pursuant to a Stock Purchase Agreement dated as of March 14, 1990 (the "Stock Purchase Agreement").

In connection with that transaction, NAC Reinsurance Corporation and The Continental Corporation agreed that Harbor would assign all of its liabilities for certain insurance policies issued by Harbor to Continental Insurance Company, which is an affiliate of Continental Corporation.

Pursuant to the Stock Purchase Agreement, Harbor and Continental also entered into the Assumption, Reinsurance and Administration Agreement dated December 13, 1990 (the "Assumption Agreement").  Under the Assumption Agreement, Harbor ceded, assigned and

7

transferred to Continental Insurance Company (and Continental Insurance Company assumed) 100% of the obligations and liabilities for all insurance policies in effect as of the closing date of the sale of Harbor to NAC Reinsurance Corporation.

This documentation, not contradicted by Porter, sufficiently shows that Harbor is a "predecessor" and an "assignor" to Continental Insurance Company. As such, Harbor is included as a released party within the general release provisions of the Settlement Agreement.

The Motion for Summary Judgment filed by the Carriers must be granted and the Motion for Summary Judgment filed by the Debtor will be refused. An appropriate Order will be entered.

```
            /s/
Warren W. Bentz
United States Bankruptcy Judge
```

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE | : | BANKRUPTCY NO. 91-468 (PGH) |
| | : | CHAPTER 11 |
| H. K. PORTER COMPANY, INC., DEBTOR: | | |
| | : | |
| CONTINENTAL CASUALTY CO., | : | ADVERSARY NO. 05-3145 |
| CONTINENTAL INSURANCE CO., | : | |
| TRANSPORTATION INSURANCE CO. | : | |
| AND COLUMBIA CASUALTY CO., | : | |
| Plaintiffs | : | |
| vs. | : | |
| H. K. PORTER COMPANY, INC., | : | |
| H. K. PORTER COMPANY, INC. | : | |
| ASBESTOS TRUST, Defendants | : | |

## ORDER

This   26    day of December, 2006, in accordance with the accompanying Opinion, it shall be, and hereby is, ORDERED as follows:

1. The Motion for Summary Judgment filed by H. K. Porter Company, Inc. and the H. K. Porter Company, Inc. Asbestos Trust is REFUSED.

2. Summary Judgment is GRANTED in favor of Continental Casualty Co., Continental Insurance Co., Transportation Insurance Co. and Columbia Casualty Co.

3. The FINAL SETTLEMENT AGREEMENT BETWEEN H. K. PORTER COMPANY, INC., H. K. PORTER COMPANY, INC. ASBESTOS TRUST, CONTINENTAL CASUALTY COMPANY, CONTINENTAL INSURANCE COMPANY, TRANSPORTATION INSURANCE COMPANY AND COLUMBIA CASUALTY COMPANY ("Settlement Agreement") releases all claims by H. K. Porter Company, Inc. ("Debtor") against the Plaintiffs for insurance coverage under policies issued by Harbor Insurance Company and the Settlement Agreement prevents the Debtor from taking any further actions to seek insurance coverage under policies issued by the Harbor Insurance Company.

```
                         /s/
              Warren W. Bentz
              United States Bankruptcy Judge
```

c: David K. Rudov, Esq.
Beth A. Slagle, Esq.